UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CURTIS SHIELDS (K-64504), ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 8077 |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| TOM DART, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Curtis Shields, filed suit, *pro se*, against multiple Defendants – Sheriff Thomas Dart, Director Salvador Godinez, Sergeant Matthew Cobble, Superintendent William Thomas, Chief Victor Thomas, Officer Nicholas Giacone, Officer Willie Lewis, and Officer Mavis Dunn, alleging a violation of his constitutional rights after he was assaulted by two pretrial detainees at Cook County Jail. Presently before the Court is Defendants' motion for summary judgment. For the reasons stated in this order, Defendants' motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the

matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002) (Pallmeyer, J.). Despite being given this notice, Plaintiff's response to Defendants' motion is deficient. In response to Defendants' motion, Plaintiff filed an affidavit and a "statement of facts in response to Defendants' motion for summary judgment." However, none of Plaintiff's statements of facts include reference to the affidavits, parts of the record, or other supporting materials that Plaintiff is relying on to support those facts. If Plaintiff is attempting to dispute Defendants' proposed facts with this same document, it is deficient for the same reason: contrary to Local Rule 56.1(b)(3), Plaintiff fails to support his disagreement with the proposed undisputed facts with any specific references to the affidavits, parts of the record, or other supporting materials that he is relying on to dispute those facts. Plaintiff's proposed undisputed facts and/or response to Defendants' proposed undisputed facts are not in compliance with Rule 56.1(b)(3). Accordingly, Defendants' proposed undisputed

facts are deemed admitted, see *Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B). However, because Plaintiff is proceeding *pro se*, the Court will consider the factual assertions he makes in his response and affidavit, but only to the extent that he could properly testify about the matters asserted at trial – that is, only with respect to those facts within Plaintiff's personal knowledge. See FED. R. EVID. 602.

**UNDISPUTED FACTS**

Plaintiff was a pretrial detainee at Cook County Jail during September and October 2009. (Defs.' 56.1(a)(3) Statement 56.1(a)(3) ¶ 1.) During the relevant dates, Plaintiff was housed in Division Nine, Tier 2B. (*Id.*, ¶ 3.) Division Nine, Tier B is a maximum security area. (*Id.*, ¶ 5.) Division Nine, Tier 2B is a "shank deck," meaning that detainees housed on that tier have been charged with possession of weapons in Cook County Jail. (*Id.*, ¶ 4.) A shank is a homemade weapon. (*Id.*)

On July 22, 2009, Plaintiff wrote a grievance regarding his safety. (Plaint.'s Affidavit ¶ 21.) At that time, Plaintiff was housed on Tier One. (*Id.*) Superintendent Thomas addressed Plaintiff's grievance and had Plaintiff moved to Tier Two. (*Id.*)

While housed on Tier Two, Plaintiff wrote a grievance that included a statement that knives were going into cells 2207 and 2208. (Defs.' 56.1(a)(3) Statement ¶ 6; Defs.' Exh. 4.) No knives were found during a search of cells 2207 and 2208 on September 25, 2009. (*Id.*, ¶ 7.) Rice and Ramos were the names of the detainees who were housed in cells 2207 and 2208. (*Id.*, ¶ 8.) Plaintiff did not tell correctional officers of any other cells to search on September 25, 2009. (*Id.*, ¶ 9.) Plaintiff did not tell any jail employees on September 25, 2009, that he was having problems with anyone in particular on Division Nine, Tier 2B. (*Id.*, ¶ 10.)

4

On October 5, 2009, Correctional Officer Lewis was on Division 9, Tier 2B. (Defs.' 56.1(a)(3) Statement ¶ 11.) While other officers searched Plaintiff's cell, Officer Lewis falsely stated, out loud, that Plaintiff was a gang chief and a "hard hitter" with the Gangster Disciples. (Plaint.'s Affidavit ¶ 5; Plaint's Dep. pg. 20.) Plaintiff was not having problems with anyone in particular in Division 9, Tier 2B, and he did not inform anyone that he was having problems with any other detainees on Division 9, Tier 2B, on October 5, 2009. (Defs.' 56.1(a)(3) Statement ¶ 13.) Plaintiff did not ask Officer Lewis for a transfer out of Division 9, Tier 2B on October 5, 2009. (*Id.*, ¶ 12.)

On October 9, 2009, Correctional Officer Dunn observed Plaintiff standing in the day room as she was leaving the tier. (Defs.' 56.1(a)(3) Statement ¶ 14.) Officer Dunn did not observe any blood on Plaintiff when she first observed him. (*Id.*, ¶ 15.) Five to ten seconds after she passed Plaintiff, Officer Dunn turned around and saw Plaintiff had blood on his face and shirt. (*Id.*, ¶ 16.) Officer Dunn did not observe Plaintiff being attacked by other detainees. (*Id.*, ¶ 17.) Plaintiff was stabbed three times during the attack in the day room. (*Id.*, ¶ 18.) At the time of the attack, there were at least ten or twelve inmates in the day room. (*Id.*, ¶ 22.)

After Plaintiff was attacked, Officer Dunn called a "10-10." (Defs.' 56.1(a)(3) Statement ¶ 19.) A "10-10" is a call used when there is an inmate-on-inmate fight and is meant to summon officers and supervisors for back-up and assistance. (*Id.*, ¶ 20.) Additional officers arrived at the scene in response to Officer Dunn's 10-10. (*Id.* ¶ 21.) It took 15-20 minutes for the additional officers to arrive at the scene. During this time, Officer Dunn did not open the interlock door to give a verbal command for the attack to stop. (Plaint.'s Statement ¶¶ 7-8.) Plaintiff had not had any problems with Officer Dunn prior to October 9, 2009. (Defs.' 56.1(a)(3) Statement ¶ 27.)

Davis and Gibbons were the detainees who attacked Plaintiff on October 9, 2009. (Defs.' 56.1(a)(3) Statement ¶ 23.) Plaintiff knows his attackers' names based on reports written about the incident. (*Id.*, ¶ 23.) Plaintiff does not know where Davis and Gibbons got the weapon with which he was stabbed. (*Id.*, ¶ 24.) Plaintiff never had any conversations with Davis or Gibbons before October 9, 2009. (*Id.*, ¶ 25.)

Plaintiff never told Officer Dunn that he was in fear for his safety. (Defs.' 56.1(a)(3) Statement ¶ 28.) Plaintiff never told anybody that he was having a problem with Davis or Gibbons. (*Id.*, 29.)

On November 5, 2009, Plaintiff was involved in a fight that took place in a bullpen in the courthouse. (Defs.' 56.1(a)(3) Statement ¶ 31.) None of the Defendants were present during the fight in the bullpen. (*Id.*)

Cook County Jail has an established grievance procedure that was available to all detainees. (Defs.' 56.1(a)(3) Statement ¶ 32.) Filing an appeal of grievance response is required to exhaust a detainee's administrative remedies. (*Id.*, ¶ 34.)

Plaintiff wrote a grievance regarding the October 9, 2009, incident on October 16, 2009. (Defs.' 56.1(a)(3) Statement ¶ 36.) This grievance was given the control number 2009 X 2274. (*Id.*, ¶ 37.) Plaintiff received a response to grievance 2009 X 2274 on December 17, 2009. (*Id.*, ¶ 38.) Plaintiff asked Case Worker Butler for the original grievance form because he could not read the writing on the response. (Plaint.'s Affidavit ¶ 25.) Butler refused to allow Plaintiff to keep the original grievance or to help Plaintiff with the "appeal form." (*Id.*) Plaintiff did not complete the "Request for an Appeal" section of that grievance. (Defs.' 56.1(a)(3) Statement ¶ 39.)

Plaintiff completed a second grievance about the October 9, 2009, incident on November 21, 2009. (Defs.' 56.1(a)(3) Statement ¶ 40.) This grievance was given control number 2009 X 2585. (*Id.*, ¶ 41.) Plaintiff received a response to the second grievance on January 15, 2010. (*Id.*, ¶ 42.) Plaintiff did not complete the "Request for an Appeal" section for the second grievance. (*Id.*, ¶ 43.)

Plaintiff never appealed the response to grievances 2009 X 2274 or 2009 X 2585. (Defs.' 56.1(a)(3) Statement ¶ 44.) Plaintiff's complaint was mailed to the Clerk of the United States District Court on December 22, 2009. (*Id.*, ¶ 45.)

## ANALYSIS

Defendants first argue that Plaintiff failed to fully exhaust his administrative remedies.

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner/detainee suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

A prisoner/detainee must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a detainee's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *See Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a) a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter*, 534 U.S. at 524-25.

However, officials cannot take an unfair advantage of the exhaustion requirement by making such exhaustion unavailable. *See Dole*, 438 F.3d at 809. For example, if the officials fail to respond to a properly filed grievance or take other affirmative steps to prevent a prisoner/detainee from being able to fully exhaust his administrative remedies, grievance procedures are deemed "unavailable." *See Dole*, 438 F.3d at 809.

Here, Plaintiff filed a grievance following the attack and prior to filing suit. Plaintiff received a response to that grievance but did not appeal the denial of the grievance. Plaintiff avers that he could not appeal the denial of the grievance because he could not read the response and Butler refused to provide Plaintiff with the original or a legible copy that would have allowed him to read the response and file an appeal. In addition, Plaintiff avers that Butler refused to assist Plaintiff when he asked for help in filing an appeal to the denial of the grievance. Based on these facts, a genuine issue of material fact exists as to whether Butler engaged in affirmative conduct that essentially prevented Plaintiff from appealing the denial of his initial grievance and fully exhausting his administrative remedies prior to filing suit.

Defendants also argue that Plaintiff's claims fail on their merits.

Jail officials have a duty to protect pretrial detainees/inmates from violence by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1988); *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To succeed on a claim based on a correctional officer's failure to protect another inmate, Plaintiff must demonstrate that the correctional officer was deliberately indifferent to the fact that Plaintiff was in serious risk of being harmed. *See Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889. Conduct by the correctional officer that is simply negligent or inadvertent is not actionable under Section 1983. Instead, the correctional officer must know of a substantial risk of serious harm and he must fail to take reasonable measures to prevent that harm from occurring. *See Pinkston*, 440 F.3d at 889; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

Thus, Plaintiff must demonstrate that the Defendants were was deliberately indifferent to the fact that Plaintiff was in serious risk of being harmed. *See Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889. Defendants must have known of a substantial risk of serious harm to Plaintiff and they must have failed to take reasonable measures to prevent that harm from occurring. *See Pinkston*, 440 F.3d at 889.

Plaintiff has not demonstrated that Defendants knew of a substantial risk of serious harm to Plaintiff by his attackers. Prior to the attack, there were no interactions or incidents between Plaintiff and Davis or Gibbons. Plaintiff did not know Davis or Gibbons prior to the attack. Plaintiff never notified a correctional officer of threats from Davis or Gibbons. In addition, Plaintiff never informed any correctional officer of any threats, incidents, confrontations, issues or disagreements involving any detainees on Tier 2B. Plaintiff did file a grievance on July 22, 2009,

regarding his safety. However, Plaintiff has not demonstrated that this grievance informed anyone of a threat by a specific detainee or gang and Plaintiff was not housed on Tier B at that time. In addition, Superintendent Thomas took action following this grievance, moving Plaintiff to a different tier based on the grievance. Furthermore, Plaintiff does not dispute that he never informed anyone that he had an issue with the detainees who attacked him.

In his response, Plaintiff argues that because he was housed in a high security unit based on a weapons charge against the detainees, the Defendants were put on notice that detainees may fight with weapons, so they should have known of the possible threat of a substantial risk of serious harm to him. However, the mere fact that the detainees are housed in a high security area due to weapon violations does not establish that Defendants knew of a substantial risk of serious harm to Plaintiff by Davis or Gibbons. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("Prisons, after all, are dangerous places often full of people who have demonstrated aggression.").

Furthermore, a serious risk of harm to Plaintiff by Davis or Gibbons cannot be inferred because Plaintiff has not demonstrated there was an obvious risk of inmate attacks based on a longstanding, pervasive, well documented, or expressly noted history of such attacks at the Jail. *See Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 519 (7th Cir. 2002) (plaintiff did not demonstrate that actual knowledge of risk of harm could be inferred because he provided no evidence suggesting violence was a pervasive element of the jail's environment or that there was increased risk of violence due to jail policy). While Plaintiff alleges that knives, gang fights, and assaults were pervasive, he fails to provide any evidence to support his allegations. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (summary judgment is the "put up or shut up" time in litigation).

Plaintiff also argues that Officer Lewis put Plaintiff in danger on October 5, 2009, when he falsely stated, out loud, that Plaintiff was a gang chief and a "hard hitter" with the Gangster Disciples. However, Plaintiff does not dispute that at that time he was not having problems with anyone in particular in Division 9, Tier 2B, or that he did not inform anyone that he was having problems with any other detainees on Division 9, Tier 2B. The sole comment by Officer Lewis does not demonstrate that the risk of harm to Plaintiff was or then became obvious. *See Grieveson*, 538 F.3d at 775 (risk of harm based on plaintiff being called a "snitch" was not obvious).

Plaintiff has also not demonstrated that Officer Dunn's response to the incident was unreasonable. A prison Official is not required to place herself at risk by breaking up a fight between inmates. *See Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). A lone prison guard or correctional officer is not required to take an unreasonable risk of attempting to break up a fight. *See Guzman*, 495 F.3d at 858 (recognizing that a deviation from standard procedure, when an officer continued to take steps toward stopping the incident, could not be characterized as deliberate indifference).

In the instant case, as soon as Officer Dunn became aware of the situation, she called a 10-10 so additional officers could assist her getting control over the area. Officer Dunn monitored the fight while in the secure area and as soon as back-up arrived, the fight was broken up.

Plaintiff argues that Officer Dunn's response was not reasonable because she allowed the fight to continue and did not open the interlock door and give a verbal command for Davis or Gibbons to cease the attack. However, Officer Dunn did not need to place herself at risk to attempt an break up the fight. *See Guzman*, 495 F.3d at 858.

To the extent that Plaintiff's claims are brought against the jail administrators in their official capacities, such claims are actually against Cook County. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

To prevail on a Section 1983 claim against a government entity, a plaintiff must demonstrate that an alleged constitutional right deprivation was caused by a policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs can take three forms: an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or a constitutional injury that was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000).

Plaintiff has failed to demonstrate that his attack was the result of a policy, custom, or practice. General allegations of violence in the jail and/or the presence of weapons do not constitute evidence of a policy, custom or practice. *See Dale*, 548 F.3d at 569; *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) (a series of acts of misconduct required to lay the premise of deliberate indifference). Accordingly, Plaintiff has failed to demonstrate a claim against any Defendants in their official capacity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [76] is granted. The Clerk is directed to enter judgment in favor of the Defendants pursuant to FED. R. CIV. P. 56. The case is terminated.

Dated: May 11, 2011

Joan B. Gottschall
United States District Court Judge